# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| HUDSON INSTITUTE OF PROCESS RESEARCH INCORPORATED, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:24-cv-989 |
| | § | Judge Mazzant |
| NATIONAL LABOR RELATIONS BOARD, et. al., | § § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is United Electrical, Radio, and Machine Workers of America's Renewed Motion to Intervene and Supporting Brief (the "Motion") (Dkt. #87). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

The procedural and factual background of this case is more thoroughly set forth in this Court's prior Memorandum Opinion and Order (Dkt. #81 at pp. 1–3). Thus, the Court will only briefly identify procedural developments which influence the relevant Motion.

United Electrical, Radio and Machine Workers of America ("UE") originally filed various unfair labor charges against Plaintiff, which the NLRB subsequently pursued. This ultimately resulted in two distinct proceedings—the First Consolidated Proceeding and the Second Consolidated Proceeding (Dkt. #1 at pp. 10, 13). On November 5, 2024, Plaintiff filed this suit, seeking to enjoin the First and Second Consolidated Proceedings and asking the Court to render declaratory relief related to their constitutionality (Dkt. #1).

On November 14, 2024, UE filed its first Motion to Intervene and Supporting Brief (Dkt. #19). Five days later, UE filed its Unopposed Motion for Leave to File Brief *Amicus Curiae* (Dkt. #25). In resolving the two motions, the Court issued an Order granting UE leave to file its *amicus curiae* brief and denied its motion to intervene as moot on July 23, 2025.[1] At the end of that Order, the Court noted that "UE may file another motion to intervene at a later time, if circumstances change" (Dkt. #72).

UE filed this Motion on February 23, 2026, "[b]ecause circumstances have changed" (Dkt. #87 at p. 1). As is often the case, UE's Motion was quickly followed by a response (Dkt. #88) and a brief reply (Dkt. #89). The Motion is now ripe for adjudication.

## LEGAL STANDARD

Federal Rule of Civil Procedure 24 provides for two forms of intervention: (1) intervention of right (mandatory intervention); and (2) permissive intervention. FED. R. CIV. P. 24. A proposed intervenor is entitled to mandatory intervention if the following elements are satisfied:

1. [T]he application for intervention must be timely;
2. the applicant must have an interest relating to the property or transaction which is the subject of the action;
3. the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]
4. the applicant's interest must be inadequately represented by the existing parties to the suit.

---

[1] The Court notes here that UE did not identify intervention and the ability to file an *amicus curiae* brief as mutually exclusive forms of relief. Instead, UE expressly moved "for its brief to be accepted as an *amicus curiae* submission *in the event that* the Court ultimately denies UE's Motion to Intervene" (Dkt. #25 at p. 2 (emphasis added)). It was in this specific context that UE's original request for intervention was denied as moot.

*See* FED. R. CIV. P. 24(a)(2); *see also Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).[2]

"Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007).[3]

If intervention is not mandatory, then it is permissive. A court may permit anyone to intervene whom "has a claim or defense that shares with the main action a common question of law or fact" as long as the intervention does not "unduly delay or prejudice the adjudication of the original parties' right." FED. R. CIV. P. 24(b)(1)(B), (b)(3). The decision to permit intervention is a "wholly discretionary" one, even if there is a common question of law or fact and the requirements of Rule 24(b) are satisfied. *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n.*, No. 1-15-CV-134, 2015 WL 11613286, at *2 (W.D. Tex. Dec. 22, 2015) (quoting *Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984)).

## ANALYSIS

Whether UE will succeed in its second endeavor to intervene in this action will be determined according to "the mysteries of permissive intervention and intervention of right as set in Rule 24 of the Federal Rules of Civil Procedure." *Bishop v. N. L. R. B.*, 502 F.2d 1024, 1025 (5th Cir. 1974). The Court will address each doctrine in turn.

---

[2]  Intervention of right is also permitted when there is an "unconditional right to intervene by a federal statute." FED. R. CIV. P. 24(a)(1).

[3]  Although Rule 24 enumerates threshold requirements for intervention, the Fifth Circuit, in *Texas*, has been clear that those requirements should be "liberally construed." 805 F.3d at 656–57 ("Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." (citation modified)). "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (internal quotation marks omitted); *see also Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (the inquiry "is a flexible one, and a practical analysis of the facts and circumstances of each case is appropriate." (citations omitted)).

## I.    Mandatory intervention

FED. R. CIV. P. 24(a)(2) controls intervention of right in this case. UE, as the movant seeking to intervene, bears the burden of demonstrating entitlement to intervene and must establish each of the requirements under that Rule. *Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978). If UE fails to satisfy its burden on any one requirement, it will generally have no mandatory right to intervene. *Haspel*, 493 F.3d at 578; *see also Int'l Tank*, 579 F.2d at 967 ("If an intervenor fails to meet one of these requirements, then it cannot intervene as a matter of right."). Because UE has only carried its burden as to two of the four elements required to show intervention of right, UE will not be permitted to intervene in this case.

### A.    Whether UE's Motion is timely

Because "[t]here are no absolute measures of timeliness" in a mandatory intervention analysis, the timeliness element is concerned with four factors, including "[t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene." *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996); *St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 974 (5th Cir. 2019). Specifically, "[t]he timeliness clock runs either from the time the applicant knew or reasonably should have known of his interest, or from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit." *Edwards*, 78 F.3d at 1000 (internal citation omitted) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977)).

This Court has previously indicated that the present Motion does not represent UE's first attempt at intervention in this case. While UE should not be unduly punished for attempting to intervene at an early stage in the proceeding, the Court must determine whether UE filed the present Motion under a prior inclination that its interests were threatened, whether any parties or

4

the potential intervenor itself would suffer prejudice as a result of any intervention or denial thereof, and whether "[t]he existence of unusual circumstances militat[e] either for or against a determination that the application is timely." *See id.* (citing *Stallworth*, 558 F.2d at 264).

UE asks the Court to begin its timeliness analysis by considering the date at which UE allegedly discovered that the existing parties would not adequately protect its interest. UE claims that it just recently discovered that the NLRB does not plan to defend a specific legal argument related the constitutionality of specific removal protections on summary judgment, and that it therefore "can no longer rely on the NLRB to adequately protect its interest" (Dkt. #87 at p. 8). UE claims it recently arrived at this conclusion upon observing the NLRB's actions in "similar litigation" which occurred on January 23, 2026 (Dkt. #87 at p. 8 (citing NLRB's Br. in Support of Mot. for SJ, *Aunt Bertha v. NLRB, et al.*, No. 4:24-CV-00798-P (N.D.TX. Jan. 23, 2026), Dkt. No. 59 at 719 n.2, 727 n.11)). Both Plaintiff and UE admit, however, that the NLRB, through its "Notice of Modified Position," (the "Notice") informed the Court and all parties that it was no longer relying on the very arguments that UE now wants to make (Dkt. #87 at p. 10; Dkt. #88 at p. 4). In that Notice, which was filed on March 5, 2025, the NLRB stated that it was modifying its arguments to comport with the fact that "the Department of Justice now agrees with [Plaintiff's] positions in this case," which included dropping arguments related to the constitutionality of removal (Dkt. #88 at p. 4 (citing Dkt. #64)). Thus, the NLRB's decision to abandon constitutional arguments related to removal power in "similar litigation" does not constitute a "changed circumstance"—rather, it represents the natural consequence of the NLRB's noticed decision to modify its position.

The Court denied UE's original request for intervention, which expressly referenced the constitutionality of removal protection, over *four months after* the NLRB filed its Notice on that issue, and UE ultimately waited almost *one year* before filing the present Motion on the same issue contained in that Notice.[4] Under these circumstances, the Court finds UE's delay indicative of untimely intervention. *See ODonnell v. Harris County*, 808 F. Supp. 3d 738, 751 (S.D. Tex. 2025) (collecting cases) ("The trend in Fifth Circuit case law is that a movant timely intervenes when it seeks to do so within several months of learning that the parties are no longer protecting its interests but that, after close to a year, a motion to intervene will likely be untimely.").

Furthermore, regarding the issue of prejudice, the Court notes that UE presently seeks to intervene in this matter well after the close of discovery for the express purpose of injecting entirely new arguments into various dispositive motions which become due on May 15, 2026 (Dkt. #82 at p. 2). As a result, UE has not only failed to timely file, or renew, its original motion to intervene or otherwise identify any "changed circumstances" which warrant reconsideration of this Court's prior denial of UE's original motion to intervene—UE also asks this Court to impose an undue burden on the parties who no longer have the ability to conduct discovery related to its proposed constitutional arguments.[5] Importantly, a similar burden will not be shared by UE in the event the Court denies its proposed intervention, as UE did not protest its designation as *amicus curiae* under

---

[4]  In its original motion for intervention, UE downplayed the importance of constitutional arguments related to removal protections, noting that "it has a narrower interest in vindicating its members' rights under the statute, *whether or not* the ALJ's removal protections are ultimately deemed to be constitutional" (Dkt. #19 at p. 10 (emphasis added)).

[5]  Even if "UE doesn't intend to raise any facts that would require discovery," (Dkt. #89 at p. 4) the Court finds that the lack of "ample time remaining before the dispositive motion deadline," together with the fact that the parties in this action have proceeded under the unassailed assumption that constitutional removal arguments were abandoned almost one year ago, constitutes prejudice notwithstanding the issue of discovery. *Cf. Med. Components, Inc. v. Osiris Med., Inc.*, No. EP-15-CV-305-PRM, 2016 WL 7655786, at *4 (W.D. Tex. Apr. 5, 2016).

similar circumstances and may still seek to "express a unique view offered by neither party" through that position. *Louisiana v. Burgum*, 132 F.4th 918, 924 (5th Cir. 2025) (quoting *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020)). Thus, the Court finds that UE has failed to offer proof sufficient to survive the Court's "review of the timeliness element" pertaining to mandatory intervention. *Edwards*, 78 F.3d at 1000.

> **B.** **Whether UE has an interest relating to the property or transaction**

An applicant for intervention must also have an interest relating to the property or transaction which forms the subject matter of the action. Intervention as a matter of right requires "a direct, substantial, legally protectable interest in the proceedings." *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (*en banc*) (quoting *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir.), *cert. denied sub nom.*, *Trefina A.G. v. United States*, 400 U.S. 878 (1970)). In other words, "the inquiry turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas*, 805 F.3d at 657.

UE argues that it has a sufficient interest relating to the outcome of the present action because it "seeks to have its members' rights vindicated, both as a matter of justice and in order for [Plaintiff's] employees to not be intimidated in the exercise of their rights" (Dkt. #87 at p. 12). It argues that its position as the charging party in the underlying administrative proceedings imbues it with the interest necessary to prevail on this element, and primarily relies upon one case, *UAW Local 283 v. Scofield*, 382 U.S. 205 (1965), for support.

On the other hand, Plaintiff argues that the Fifth Circuit "squarely extinguished any interest that the UE might have had in this proceeding when it reversed the NLRB's order for [Plaintiff] to bargain with the UE as the representatives of [Plaintiff's] employees" (Dkt. #88 at

p. 8 (citing *Hudson Inst. of Process Rsch. Inc. v. NLRB*, 117 F.4th 692, 707 (5th Cir. 2024))). Plaintiff also cites *Space Exploration Technologies Corp. v. Nat'l Labor Relations Bd.*, 151 F.4th 761 (5th Cir. 2025), and asks the Court to hold that "UE cannot have a legitimate interest in promoting a process that would violate the separation of powers" (Dkt. #88 at p. 10). Plaintiff goes on to cite multiple decisions from other circuits to distinguish between the interest a charging party might have on appeal of a final order, as outlined in *Scofield*, and the interest needed to intervene in a proceeding (Dkt. #88 at p. 9).

Because UE relies upon its status as the charging party in the underlying litigation to satisfy this element, the Court's analysis opens with a reference to the Supreme Court's decision in *Scofield*. 382 U.S. at 205. In *Scofield*, the Supreme Court grappled with the distinction between 'public' and 'private' interests held by a charging party seeking to intervene in a first appellate review proceeding. *See id.* at 212, 218. Almost a decade after its publication, the Fifth Circuit interpreted *Scofield* and determined that the case stands for the proposition that "either the charged party or the charging party who is successful before the [NLRB] may intervene as of right in any review proceedings before the Court of Appeals." *Concrete Materials of Ga., Inc. v. N.L.R.B.*, 440 F.2d 61, 67 (5th Cir. 1971).

The rule established in *Scofield*, as recognized by the Fifth Circuit in *Concrete Materials*, is not directly applicable to the facts of this case. Unlike *Scofield*, this case does not involve an appellate review of an enforcement proceeding following a final NLRB order. *See* 382 U.S. at 214. Rather, UE, a charging party in the underlying administrative proceedings, is attempting to intervene in a suit concerned with Plaintiff's attempt to end the administrative proceedings altogether (*See* Dkt. #1 ("[Plaintiff] brings this suit . . . against Defendants because Defendants are

8

presently pursuing multiple unconstitutional administrative proceedings against it.")). Notwithstanding these factual differences, the Court is moved by the Supreme Court's emphasis of the privileges afforded a charging party: "the charging party is accorded formal recognition: he participates in the hearings as a party[,] he may call witnesses and cross-examine others, may file exceptions to any order of the trial examiner, and may file a petition for reconsideration to a Board order." *Id.* at 219 (citation modified). This language indicates that UE, as a charging party in the underlying proceedings, holds an interest in the outcome of this litigation that goes beyond a mere "generalized preference." *Texas*, 805 F.3d at 657.

Furthermore, the Fifth Circuit's decision in *Hudson* does little to shake UE's specialized interest. That case did not stand for the proposition that Plaintiff and/or its employees are not associated with UE. Rather, it held only that UE's proposed "bargaining unit, *i.e.*, 'the group of workers that will vote on union representation'" improperly included "supervisors who are not empowered with collective bargaining rights." 117 F.4th at 697, 707 (citation modified) (quoting *Kindred Nursing Ctrs. E., LLC v. NLRB*, 727 F.3d 552, 554 (6th Cir. 2013)). Plaintiff never goes so far as to imply that all of UE's members are supervisors, and has thus not fully severed the connection between UE and Plaintiff as an employer of its members.

The other Fifth Circuit opinion relied upon by Plaintiff, *Space Exploration*, is similarly unsupportive of Plaintiff's perspective. In that case, the Fifth Circuit expressly determined that "[b]ecause NLRB ALJs are inferior officers insulated *by two layers of for-cause protection*, the removal restrictions are unconstitutional." 151 F.4th 761, 775 (5th Cir. 2025) (emphasis added). Of course, neither this Memorandum Opinion nor the Fifth Circuit's opinion in *Space Exploration* directly resolves the specific issue proposed by UE, which questions "the constitutionality of a

9

*single layer* of removal protections for ALJs" (Dkt. #89 at p. 6 (emphasis added)). "And though it may be criticized as 'elementary arithmetical logic,'" the Court follows the Supreme Court's recognition that "two layers are not the same as one." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 501 (2010).

Given the unique interest held by a charging party in proceedings related to its charges and the threat that this litigation poses to the administrative proceedings brought by UE, the Court finds that UE has proven that it holds an interest sufficient to survive an analysis of the second requirement related to mandatory intervention.

### C. Whether disposition of the action may, as a practical matter, impair or impede UE's ability to protect its interest

"The assessment of this factor goes hand in hand with the substantial interest factor discussed above." *G & H Dev., LLC v. Penwell*, No. 13-CV-0272, 2014 WL 12663199, at *3 (W.D. La. Sept. 4, 2014). If Plaintiff prevails in this case, the underlying proceedings, which were initiated as a result of UE's charge, will be enjoined and declared violative of Plaintiff's constitutional rights (*See, e.g.*, Dkt. #1 at p. 27 ("The NLRB proceedings against Hudson deprive it of its constitutional right to a trial by jury.")). As a result, and in the absence of Plaintiff's argument to the contrary, the Court determines that UE has carried its burden to demonstrate that its interests may be impaired or impeded by denial of its motion.

### D. Whether UE's interest is inadequately represented by the existing parties to the suit

The final criterion that UE must satisfy in order to intervene as of right is that the NLRB and other parties do not adequately represent its interest. Both the Supreme Court and the Fifth Circuit have identified Plaintiff's burden under this element as "minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972) ("The requirement of the Rule is satisfied if the applicant

shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *Ross v. Marshall*, 426 F.3d 745, 761 (5th Cir. 2005) ("We have described this burden as 'minimal,' noting that a potential intervenor need only show that 'representation by the existing parties *may* be inadequate.'" (quoting *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002))). However, the Fifth Circuit has determined that "[t]his requirement . . . must have some teeth, so there are two presumptions of adequate representation." *Brumfield*, 749 F.3d at 345 (citing *Edwards*, 78 F.3d at 1005). Of particular importance to the Court's analysis is the second presumption, which "arises when the would-be intervenor has the same ultimate objective as a party to the lawsuit," in which event "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* (quoting *Edwards*, 78 F.3d at 1005).

Although UE concedes that it shares an ultimate objective with the NLRB, it cites the Fifth Circuit's decision in *Brumfield*, 749 F.3d at 345, to argue that UE's representation in the present litigation is inadequate because its interests are not "precisely" aligned with those held by the NLRB (Dkt. #87 at p. 13). UE claims that it will "seek different relief and put forth arguments that the NLRB may not," and notes its intent to "potentially seek to appeal any adverse decisions" (Dkt. #87 at p. 14). These "differing arguments," UE argues, "are sufficient to meet the minimal burden of showing that the NLRB's representation *may* be inadequate" (Dkt. #87 at p. 14).

Plaintiff disagrees and asks the Court to find that the NLRB adequately represents UE, as UE cannot show the requisite "adversity of interest, collusion, or nonfeasance" necessary to rebut the relevant presumption of adequate representation (Dkt. #88 at pp. 11–13). Plaintiff further argues that "[t]he fact that the UE wants to second-guess the NLRB's litigation choices does not

11

render the UE inadequately represented." For reasons stated below, the Court will find for Plaintiff on this issue.

In *Brumfield*, the Fifth Circuit plainly held that a potential intervenor satisfies their burden as to the final element of mandatory intervention where they identify "the lack of unity in all objectives, combined with real and legitimate additional or contrary arguments." *Id.* at 346. This decision, however, is limited in scope. In *Guenther v. BP Retirement Accumulation Plan*, 50 F.4th 536 (5th Cir. 2022), for example, the Fifth Circuit clarified that "[d]ifferences of opinion regarding an existing party's litigation strategy or tactics used in pursuit thereof, without more, do not rise to an adversity of interest." *Id.* at 543. There, the Fifth Circuit cited multiple decisions, including the First Circuit's opinion in *SEC v. LBRY, Inc.*, 26 F.4th 96, 99–100 (1st Cir. 2022), for the proposition that "[a] proposed intervenor's desire to present an additional argument or a variation on an argument does not establish inadequate representation." *Guenther*, 50 F.4th at 543 (quoting *LBRY*, 26 F.4th 99–100). Thus, because UE's reliance on its alternative constitutional arguments and litigation strategy alone is insufficient to identify a sufficient "adversity of interest," the Court must examine the relationship between UE and the NLRB in greater detail to determine whether Plaintiff has rebutted the relevant presumption.

In its Motion, UE admits that "both the UE and the [NLRB] share the common objective of winning final judgment so that the NLRB may adjudicate the charges filed by the [UE]" (Dkt. #87 at p. 13). In an attempt to identify an adversity of interest, UE points to its desire to "avoid[] the lingering effects [Plaintiff's] unfair labor practices may have on [both] its supporters' support for the Union" and any further attempts to "establish[] a collective-bargaining relationship between the UE and [Plaintiff]" (Dkt. #87 at p. 14). This desire is insufficient to rebut the

presumption of adequate representation for two reasons. First, UE's identified interest is not even "*potentially* in conflict" with that of the NLRB. *Id.* at 545. Rather, that interest describes the natural consequences of the NLRB's success in the underlying administrative proceedings. It may fairly be noted that both entities wish to defeat Plaintiff at summary judgment in the present action in order to move on to minimize any "lingering effects" caused by Plaintiff's alleged unfair labor practices. In other words, this is not a case in which UE is left "without a friend in this litigation." *Bush*, 740 F.2d at 358 (quoting *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 825 (5th Cir. 1967)).

Second, Plaintiff's alleged unfair labor practices are not at the center of this specific litigation. Rather, this Court has been asked to determine the constitutionality of the ALJs and the underlying administrative proceedings. While UE might have an interest in being able to continue the underlying proceedings to prevent certain "lingering effects" from influencing its membership, such an interest is not particularly demonstrative of any divergence in interest between UE and the NLRB in this suit, which is concerned with the issue of constitutionality first and foremost. *See Guenther*, 50 F.4th at 547 (denying a motion to intervene because "[t]he *Press* Plaintiffs cannot demonstrate that their interests diverge from those of the *Guenther* Plaintiffs in any meaningful way.").

UE has not carried its burden to rebut the presumption of adequate representation brought about by its shared ultimate goal with the NLRB.[6] Specifically, UE has not shown that it seeks to

---

[6] Plaintiff's repeated citation to the Supreme Court's decision in *Scofield* does not change this Court's decision. There, the Supreme Court recognized that the NLRB and charging parties may have diverging interests "[w]hen the court is to rule on the merits of the Board's order" or when a case "involves, potentially, a breach of the parties' collective bargaining agreement." *Scofield*, 382 U.S. at 221. Neither circumstance is applicable here, and while the Supreme Court rejected the notion that "the rhetoric of 'public interest' . . . excludes recognition of parochial private interests," the Supreme Court fell far short of issuing a blanket right of intervention to every charging party seeking involvement in litigation associated with its underlying administrative proceedings. *Id.* at 218.

13

intervene on account of a particular adversity of interest. Furthermore, UE has neither alleged that Plaintiff has colluded with the NLRB nor attempted to rebut Plaintiff's assertion that "[t]he NLRB is represented by able in-agency counsel, who are experienced in these kinds of constitutional challenges" (Dkt. #88 at p. 13). Because UE has not succeeded in carrying its burden of showing that the NLRB is acting adverse to its interest, the Court finds that mandatory intervention is inappropriate in this case. *See, e.g.*, *Missouri v. U.S. Food & Drug Admin.*, No. 2:22-CV-223-Z, 2025 WL 1223581, at *4 (N.D. Tex. Apr. 28, 2025) (rejecting the argument that "even the mere possibility of adverse interests is enough to demonstrate inadequate representation in the Fifth Circuit" because "a presumption applies"). Indeed, "[i]f litigation strategy disputes with an existing party established inadequate representation, 'Rule 24 would have no meaning.'" *Woodward Harbor LLC v. City of Mandeville*, No. CV 23-5824, 2025 WL 1194161, at *5 (E.D. La. Apr. 24, 2025) (quoting *Guenther*, 50 F.4th at 544).

## II.    Permissive intervention

Permissive intervention is provided for by FED. R. CIV. P. 24(b)(1), which holds in relevant part that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Importantly, permissive intervention under Rule 24(b) is "wholly discretionary" and "may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471–72 (5th Cir. 1984) (*en banc*)). Further, "[a] finding that a motion for intervention as of right is untimely applies equally to a motion for permissive intervention." *Price v. Daigre*, No. 5:08-CV-16 DCB JMR, 2011 WL 6046313, at *4 (S.D. Miss. Dec. 5, 2011) (citing *Lucas v. McKeithen*, 102 F.3d 171, 173 (5th Cir. 1996)).

In consideration of the totality of the circumstances presented by this case, including the untimeliness of UE's Motion, the Court declines to permit UE to intervene in the present action. Nevertheless, because UE claims that the NLRB might[7] raise arguments similar or identical to the arguments included in its Motion, the Court will look favorably upon an additional request to file an *amicus curiae* brief. "Where a party has sought intervention but has been denied such relief, 'it is common practice to allow the applicant to file a brief amicus curiae.'" *Rowland v. GGNSC Ripley, LLC*, No. 313CV00011DMBSAA, 2016 WL 4136486, at *4 (N.D. Miss. Aug. 3, 2016) (quoting 7C FED. PRAC. & PROC. CIV. § 1913 (3d ed.) (collecting cases)); *see also Louisiana*, 132 F.4th at 924 ("[W]here the movants express a unique view offered by neither party that they want heard, the proper procedure is to move to appear as *amici curiae*, not to move to intervene."(citation modified)); *Richardson v. Flores*, 979 F.3d 1102, 1106 (5th Cir. 2020) ("To the extent Movants want their voices heard, however, the proper procedure is to move to appear as *amici curiae*, not to move to intervene.").

## CONCLUSION

It is therefore **ORDERED** that United Electrical, Radio, and Machine Workers of America's Renewed Motion to Intervene and Supporting Brief (Dkt. #87) is hereby **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 12th day of May, 2026.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

[7] UE's Motion recognizes that "UE will . . . put forth arguments that the NLRB *may* not" (Dkt. #87 at p. 14 (emphasis added)).