**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

**HUDSON INSTIUTE OF PROCESS
RESEARCH INCORPORATED,**

                                 Civ. Action No. 4:24-CV-00989

          *Plaintiff*,              Chief Judge Amos L. Mazzant, III

v.

**NATIONAL LABOR RELATIONS BOARD, et. al.**

          *Defendants*

**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA'S
*AMICUS CURIAE* BRIEF IN SUPPORT OF NLRB DEFENDANTS**

**TABLE OF CONTENTS**

Interest of Amicus Curiae ................................................................................................. 1

Introduction...................................................................................................................... 1

Argument ......................................................................................................................... 2

    I.   The *Findhelp* Decision Blinks Reality, Which is that the Statutory Removal Protections Afforded NLRB and MSPB Members are Not Enforceable ....................................................... 2

    II.   *Findhelp* Doesn't Reflect the Severability Analysis Laid Out by the Supreme Court, and When the Proper Analysis is Applied, the Removal Protections are Severable ......................... 4

        A.   The District Court in *Findhelp* Failed to Even Mention the Presumption of Severability ..................................................................................................................... 4

        B.   The District Court in *Findhelp* Failed to Mention the NLRA's Severability Provision, Which Requires Even Stronger Evidence to Overcome Severability ..................................... 5

        C.   In Holding the Removal Protections Non-Severable, the District Court in *Findhelp* Looked Only to Whether Severance Would Make the NLRB Officials Removable At-Will, Not Whether Congress Would Have Preferred No Agency to One Headed by Removable Officers ........................................................................................................................... 6

        D.   Applying the Proper Test, the NLRB Member Removal Protections Are Severable, and that Holding Would Also Eliminate the Constitutional Issue With ALJ Removal Protections............................................................................................................................ 7

    III.   This Court Lacks Jurisdiction over Hudson's Remedial Claim..................................... 13

Conclusion ...................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987) ................................................................. 5, 12

*Alaska Airlines, Inc. v. Donovan*, 766 F.2d 1550 (D.C. Cir. 1985) ............................................... 5

*Aunt Bertha d/b/a Findhelp v. NLRB, et al.*, 4:24-cv-798-P, 2026 WL 1365028 (N.D. Tex. May 15, 2026) ......................................................................................................... *passim*

*Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023) .................................................................... 15

*Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006) ........................... 4

*Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610 (2020) ......................................... 5

*Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985) ................................................................ 4

*Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010) ........................................................ 4, 7, 12

*Harris v. Bessent*, 775 F.Supp.3d 164 (D.D.C. 2025) ................................................................... 2

*Harvard Maintenance, Inc. v. NLRB*, 165 F.4th 886 (5th Cir. 2026) .................................... 14, 15

*Hedstrom v. NLRB*, 629 F.2d 305 (3d Cir. 1980) ........................................................................ 11

*Hiran Mgmt., Inc. v. NLRB*, 157 F.4th 719 (5th Cir. 2025) .................................................... 14, 15

*Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935) .................................................................... 10

*Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023) .................................................................. 15

*Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022) .............................................................................. 11

*Koog v. U.S.*, 79 F.3d 452 (5th Cir. 1996) ................................................................................ 5, 12

*New York v. U.S.*, 505 U.S. 144 (1992) .......................................................................................... 5

*Pathmark Stores, Inc.*, 342 NLRB 378 (2004) ............................................................................ 11

*Seila Law LLC v. CFPB*, 591 U.S. 197 (2020) ..................................................................... *passim*

*Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761 (5th Cir. 2025) ............................................... 3

*Thryv, Inc*, 372 NLRB No. 22 (2022) ......................................................................................... 13

*Trader Joe's Co. v. NLRB*, 167 F.4th 766 (5th Cir. 2026)..............................................................15

*U.S. v. Arthrex, Inc.*, 594 U.S. 1 (2021)........................................................................................12

*Wilcox v. Trump*, 775 F.Supp.3d 215 (D.D.C. 2025) ......................................................................2

*Withrow v. Larkin*, 421 U.S. 35 (1975)..........................................................................................15

**Statutes**

29 U.S.C § 160(f)............................................................................................................................15

29 U.S.C. § 151................................................................................................................................8

29 U.S.C. § 153(a)............................................................................................................................7

29 U.S.C. § 160(b)..........................................................................................................................11

29 U.S.C. § 160(c)..........................................................................................................................11

29 U.S.C. § 166..........................................................................................................................6, 7, 8

5 U.S.C. § 1202(d) ....................................................................................................................12, 13

**Other Authorities**

79 Cong. Rec. 2369 (1935)..............................................................................................................9

FLORENCE PETERSON, BUREAU OF LAB. STATS., DEP'T OF LAB., BULL. NO. 651, STRIKES IN THE
    UNITED STATES 1880–1936 (1938)...........................................................................................9

Fred B. Jacobs, *The National Labor Relations Act, the Major Questions Doctrine, and Labor
    Peace in the Modern Workplace*, 65 B.C. L. Rev. 1382 (2024)................................................9

H.R. Rep. No. 1147, 74th Cong., 1st Sess. (1935) ........................................................................10

Labor Disputes Act H.R. 8423, 73rd Cong., 2nd Sess. (1934).....................................................10

Labor Disputes Act, S. 2926, 73rd Cong., 2nd Sess. (1934) ..........................................................9

Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker
    of the United States House of Representatives (Feb. 12, 2025),
    https://www.justice.gov/oip/media/1389526/dl?inline ............................................................2

S. 2926, as reported, 73rd Cong., 2nd Sess. (1934).........................................................................9

S. Rep. No. 1184, 73rd Cong., 2d Sess. (1934) ................................................................................ 9

S. Rep. No. 573, 74th Cong., 1st Sess. (1935)................................................................................. 9

Wachter, Michael L., The Striking Success of the National Labor Relations Act, in RESEARCH
    HANDBOOK ON THE ECONOMICS OF LABOR AND EMPLOYMENT LAW (Cynthia L.
    Estlund & Michael L. Wachter, eds.) (2012)............................................................................. 9

**Regulations**

29 C.F.R. § 102.1(f) ...................................................................................................................... 11

29 C.F.R. § 102.34 ........................................................................................................................ 11

29 C.F.R. § 102.46(a)..................................................................................................................... 11

29 C.F.R. § 102.50 ........................................................................................................................ 11

**Interest of *Amicus Curiae***

The United Electrical, Radio and Machine Workers of America ("UE") currently represents more than 35,000 workers throughout the private and public sector in the United States.  The UE is the charging party in the unfair labor practice proceeding that Plaintiff seeks to permanently enjoin.

Since its founding, the UE has relied on the National Labor Relations Board ("NLRB" or "Board") to preserve its members' right to engage in protected concerted activity, remedy unfair labor practices, and resolve questions concerning representation.  The UE has a strong interest in protecting the Board's ability to continue to carry out its vital function, and to ensure that neither employers nor unions can evade accountability for violations of workers' labor rights, both for its supporters at issue in the current NLRB proceedings and its members generally.

**Introduction**

Plaintiff Hudson Institute for Process Research Inc. ("Hudson") seeks to permanently enjoin proceedings of the NLRB against it.  In support of its pursuit of a permanent injunction, Hudson relies on Judge Pittman's recent decision in *Aunt Bertha d/b/a Findhelp v. NLRB, et al.*, 4:24-cv-798-P, 2026 WL 1365028 (N.D. Tex. May 15, 2026) ("*Findhelp*").  But that decision is deeply flawed.  And it never even acknowledges the import of its holding—that the NLRB is unconstitutional such that the NLRA is unenforceable.  For the reasons that the UE explains below, that decision should not govern here.  The UE urges this Court to deny the requested permanent injunction.[1]

---

[1] Because this Court denied *amicus*'s motions to intervene, the UE will limit its arguments to those that support the arguments the NLRB presents.  Had the UE been allowed to intervene, it would have presented further arguments, including the constitutionality of the challenged removal protections and the UE's due process rights in adjudication by impartial decisionmakers, rather than those subject to the President's whims.

1

<u>Argument</u>

I.     **The *Findhelp* Decision Blinks Reality, Which is that the Statutory Removal Protections Afforded NLRB and MSPB Members are Not Enforceable**

While the *Findhelp* decision proper identifies the standard for issuing a permanent injunction, *see* 2026 WL 1365028 at *1, it fails to explain how the employer there would be subject to any irreparable harm considering recent developments regarding the removability of NLRB and MSPB members.  Indeed, the decision entirely ignores the real world developments since the complaint in that case was filed.  But if those developments are properly considered, it is clear that Hudson can show no irreparable harm by appearing before the NLRB's ALJ and members.

On January 27, 2025, the President removed NLRB Member Gwynne Wilcox from office without cause.  *Wilcox v. Trump*, 775 F.Supp.3d 215, 222 (D.D.C. 2025).  On February 10, 2025, the President removed MSPB Member Cathy Harris from office without cause.  *Harris v. Bessent*, 775 F.Supp.3d 164, 169-70 (D.D.C. 2025).  On February 12, the Department of Justice informed Congress that it determined that the removal protections afforded NLRB Members were unconstitutional.  Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 12, 2025), https://www.justice.gov/oip/media/1389526/dl?inline (concluding that tenure protections afforded NLRB members are unconstitutional).  The NLRB and the NLRB Defendants, in their official capacity, have conformed their position to that of the Department of Justice, and are not defending the constitutionality of the removal protections in this litigation.  *See* Doc.96 at PageID#1970.  On May 22, 2025, the Supreme Court allowed the removals of Wilcox and Harris to stand while the propriety of the removals was litigated.  *Wilcox*, 145 S.Ct. at 1415.  According to the Supreme Court, the Government was "likely to show that both the NLRB and MSPB

2

exercise considerable executive power." *Id*.  On December 5, the D.C. Circuit held that the President's removal of Wilcox and Harris was proper, and that the statutory removal provisions insulating those officers were unconstitutional and unenforceable.  *Harris*, 160 F.4th at 1254, 1256, 1257.

In sum, the President removed members of both the NLRB and the MSPB without cause; the D.C. Circuit held that those removals were proper despite the statutory removal provisions; the Supreme Court has declined to return the removed officers to their positions; and the NLRB Defendants here agree that the removal protections are unconstitutional and indefensible.  It is clear, then, that the removal protections extended to the NLRB and MSPB Members are not currently enforceable.  And without that level of insulation, the NLRB ALJs are subject to only a single layer of removal protections, which no one here argues is unconstitutional.  Accordingly, Hudson can't show any irreparable harm caused by the removal protections afforded NLRB ALJ or the NLRB Members.  There is no "here-and-now injury" caused by being subject to "unconstitutional agency authority" here, where the removal protections have been rendered unenforceable.  *Space Expl. Techs. Corp. v. NLRB*, 151 F.4th 761, 780 (5th Cir. 2025).  Hudson can defend itself in a proceeding structured as it prayed for in bringing its lawsuit; that is, before NLRB Members who are subject to removal by the President and an NLRB ALJ who is more directly subject to the President's supervisory authority.

*Findhelp* makes no mention of any of these developments, and provides no answer to why a party would be subject to irreparable harm under the current circumstances.  But because the President is not currently hindered in removing NLRB and MSPB Members, this Court should dissolve the preliminary injunction, and deny any further relief.

**II.** **_Findhelp_ Doesn't Reflect the Severability Analysis Laid Out by the Supreme Court, and When the Proper Analysis is Applied, the Removal Protections are Severable**

The district court in _Findhelp_ rejected the argument that the offending removal protections were severable.  In doing so, the court required that the Defendants identify language to sever from the operative statutes that left in place a statute entirely consistent with Congress's original design.  _Findhelp_, 2026 WL 1365028 at *2-3.  But that is not the test that the Supreme Court and the Fifth Circuit apply; and indeed, it sets an impossible standard.  Under _Findhelp_'s test, the only statutory language ever severable would be vestigial language that already has no effect.  Instead, when applying the poper test, the removal protections are easily severable.

A.   The District Court in _Findhelp_ Failed to Even Mention the Presumption of Severability

The Supreme Court and Fifth Circuit treat severance as the default rule.  "Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact."  _Seila Law LLC v. CFPB_, 591 U.S. 197, 234 (2020) (quoting _Free Enterprise Fund v. PCAOB_, 561 U.S. 477, 508 (2010)); _also Brockett v. Spokane Arcades, Inc._, 472 U.S. 491, 502 (1985) (describing "rule that a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it").  Courts "try not to nullify more of a legislature's work than is necessary for [they] know that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people."  _Ayotte v. Planned Parenthood of Northern New England_, 546 U.S. 320, 329 (2006) (cleaned up).  As such, the "traditional rule is that the unconstitutional provision must be severed unless the statute created in its absence is legislation that Congress would not have enacted."  _Seila Law_, 591 U.S. at 234 (cleaned up).

4

B.    <u>The District Court in *Findhelp* Failed to Mention the NLRA's Severability Provision, Which Requires Even Stronger Evidence to Overcome Severability</u>

"The standard for determining the severability of an unconstitutional provision is well established: Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *New York v. U.S.*, 505 U.S. 144, 186 (1992) (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987)). "The relevant inquiry is 'whether the statute will function in a manner consistent with the intent of Congress.'" *Koog v. U.S.*, 79 F.3d 452, 462 (5th Cir. 1996) (quoting *Alaska Airlines,* 480 U.S. at 685). "The inquiry is eased when Congress has explicitly provided for severance by including a severability clause in the statute." *Alaska Airlines*, 480 U.S. at 686. In such situations, courts "will presume that Congress did not intend the validity of the statute in question to depend on the validity of the constitutionally offensive provision unless there is strong evidence that Congress intended otherwise." *Seila Law*, 591 U.S. at 234 (cleaned up); *Koog*, 79 F.3d at 462 (explaining that, when Congress provides a severability provision, "a presumption of severability arises" that "may be overcome only by strong evidence that Congress would not have enacted the law without the invalidated portions of the statute" (internal quotation marks omitted)). Because of this "strong presumption of severability," *Barr v. Am. Ass'n of Political Consultants, Inc.*, 591 U.S. 610, 625 (2020), "the burden is placed squarely on the party arguing against severability to demonstrate that Congress would not have enacted the provision without the severed portion." *Alaska Airlines, Inc. v. Donovan*, 766 F.2d 1550, 1560 (D.C. Cir. 1985), *aff'd sub nom. Alaska Airlines*, *supra*.

The NLRA contains a severability provision. 29 U.S.C. § 166 ("If any provision of this subchapter, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of this subchapter, or the application of such provision to persons or

5

circumstances other than those as to which it is held invalid, shall not be affected thereby."). Accordingly, the proper analysis requires that the party arguing against severability present strong evidence that Congress intended the problematic provision to not be severable. The district court in *Findhelp* did the opposite, requiring the Board to present evidence that Congress would have wanted the exact statute leftover after severance. This analysis was wrong.

C.      In Holding the Removal Protections Non-Severable, the District Court in *Findhelp* Looked Only to Whether Severance Would Make the NLRB Officials Removable At-Will, Not Whether Congress Would Have Preferred No Agency to One Headed by Removable Officers

The district court in *Findhelp* found the removal protections couldn't be severed because doing so would make insulated officials removable at-will. *See* 2026 WL 1365028 at *3 ("There is no obvious way to sever [the language providing good-cause removal to ALJs] without fundamentally altering it. Removing the 'good cause' limitation would convert statute into an at-will regime that Congress did not enact."); *id.* ("[S]triking the limitations [on NLRB Member removal] in 29 U.S.C. § 153(a) would not merely remove an unconstitutional feature; it would transform the nature of the Board itself by converting it into an at-will, President-controlled body while leaving intact the same broad adjudicatory and policymaking authority Congress conferred."). But this analysis is irreconcilable with recent Supreme Court precedent.

In both *Free Enterprise Fund* and *Seila Law*, the Court—after recognizing the presumption of severability, *Free Enterprise Fund*, 561 U.S. at 508-09, and the stronger presumption where a severability clause is included, *Seila Law*, 591 U.S. at 234—stated that severance of removal protections was appropriate as long as the remaining provisions are capable of "functioning independently" and "nothing in the statute's text or historical context make it evident that Congress, faced with the limitations imposed by the Constitution, would have preferred no [agency] at all to a[n agency] whose members are removable at will." *Free*

6

*Enterprise Fund*, 561 U.S. at 509 (cleaned up); *Seila Law*, 591 U.S. at 234 (same).  In neither case did the Court deny severability because doing so would render the officials at issue removable at-will.  Instead, in *Seila Law*, the Court expressly rejected the argument that "Congress would not have wanted to give the President unbridled control over the CFPB's vast authority" because, while the evidence the petitioner pointed to "confirm[ed] that Congress preferred an independent CFPB to a dependent one," it "shed little light on the critical question whether Congress would have preferred a dependent CFPB to *no agency at all*."  591 U.S. at 236 (emphasis in original).  Accordingly, whether severance makes the agency officials removable at-will is not the "critical question"; the critical question is whether Congress would have preferred no agency to the one left once the removal protections are severed.  And that is determined by whether the remaining provisions can function independently, and whether the text or history shows that Congress would have preferred no agency to a dependent agency.

D.     Applying the Proper Test, the NLRB Member Removal Protections Are Severable, and that Holding Would Also Eliminate the Constitutional Issue With ALJ Removal Protections

Applying the principles discussed, it is clear that this Court can "use a scalpel rather than a bulldozer" to cure any constitutional defect in the statutory removal protections.  *Seila Law*, 591 U.S. at 237.

1.     Start with the removal protections extended to NLRB Members in 29 U.S.C. § 153(a).  As mentioned, the NLRA includes an express severability clause.  29 U.S.C. § 166.  Accordingly, unless there is "strong evidence" that Congress would rather have had "no agency at all," the removal protections afforded the Board Members must be severed.  *Seila Law*, 591 U.S. at 234, 237.  No such strong evidence exists here.

*First*, the surviving provisions are capable of "functioning independently" without the removal protections. None of the remaining provisions of the NLRA turns on the insulation of the NLRB Members; the agency's "structure and duties remain fully operative without the offending tenure restriction." *Id*. at 235. Indeed, we know this to be true, since the President removed a member of the NLRB over a year ago, and the agency is still able to perform all its duties.[2]

*Second*, nothing in the statute's text provides strong evidence that Congress would have preferred no Board at all to a Board whose members are removable at will. To the contrary, as discussed, the text includes a severability clause. Accordingly, "[t]here is no need to wonder what Congress would have wanted if any provision of this Act is held to be unconstitutional because it has told us [within the statute's text]:" "the remainder of this [Act] . . . shall not be affected[.]" *Seila Law*, 591 U.S. at 235 (cleaned up); 29 U.S.C. § 166.

*Third*, nothing in the statute's historical context provides strong evidence that Congress preferred no Board to one consisting of removable officers. Congress passed the NLRA to address a major issue plaguing the economy. As Congress itself explained in the statute, "[t]he denial by some employers of the right of employees to organize and the refusal by some employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest, which have the intent or the necessary effect of burdening or obstructing commerce[.]" 29 U.S.C. § 151. Indeed, "in 1934, the year before the NLRA's enactment, the United States experienced 1,856 strikes sidelining 1,466,695 workers." Fred B. Jacob, *The National Labor Relations Act, the Major Questions Doctrine, and Labor Peace in the*

---

[2] The Board lost a quorum with the removal of Member Wilcox, which prevented it from issuing final decisions. However, a quorum was recently restored, and the Board is again issuing final decisions.

8

*Modern Workplace*, 65 B.C. L. Rev. 1382, 1387 n.31 (2024) (citing FLORENCE PETERSON, BUREAU OF LAB. STATS., DEP'T OF LAB., BULL. NO. 651, STRIKES IN THE UNITED STATES 1880–1936, at 21 (1938), https://fraser.stlouisfed.org/files/ docs/publications/bls/bls_0651_1938.pdf [https://perma.cc/8LX3-WD3D]). "In 1935, the year of the NLRA's passage, there were 2,014 strikes involving 1,117,213 workers." *Id*. And these strikes caused significant disruptions. "Industrial strife and unrest at the time of the passage of the [NLRA] meant more than the inconvenient strikes. . . . Instead, it meant violent strikes that paralyzed the national economy and frequently required the deployment of the National Guard or federal troops to restore order." Wachter, Michael L., The Striking Success of the National Labor Relations Act, in RESEARCH HANDBOOK ON THE ECONOMICS OF LABOR AND EMPLOYMENT LAW 427 (Cynthia L. Estlund & Michael L. Wachter, eds.) (2012). *See also* S. Rep. No. 1184, 73rd Cong., 2d Sess. 10–11 (1934); 79 Cong. Rec. 2369, 2371 (1935) (statement of Sen. Wagner, lead sponsor of the NLRA, recounting the "bloody and costly strikes" resulting from the failure of previous statutory efforts to encourage collective bargaining); S. Rep. No. 573, 74th Cong., 1st Sess. 1–3 (1935) (summarizing the numbers of strikes, jobs and working days lost, and billion-dollar cost to the economy from then-recent strikes). Set within this historical context, it is impossible to assume that Congress would have abandoned efforts to address these massive issues if the heads of the NLRB had to be removable at will by the President.

Indeed, the initial legislative proposals didn't provide removal protections for the NLRB Members. *See* Labor Disputes Act, S. 2926, 73rd Cong., 2nd Sess., § 201 (1934); S. 2926, as reported with amendments, 73rd Cong., 2nd Sess., § 4 (1934) (creating National Industrial Adjustment Board within Department of Labor); Labor Disputes Act H.R. 8423, 73rd Cong., 2nd Sess., § 201 (1934); National Labor Relations Act, S. 1958, 74th Cong., 1st Sess., § 3 (1935);

9

H.R. 7978, 74 Cong., 1st Sess., § 3 (1935) (proposing to place NLRB within Department of Labor).  It was only after the Supreme Court handed down *Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935), did lawmakers insert removal protections for the NLRB Members into the statutory language.  *See* H.R. Rep. No. 1147, 74th Cong., 1st Sess. 2, 14 (1935) (citing *Humphrey's Executor* as reason for including the removal protections).  This legislative history suggests that Congress was likely to create an uninsulated Board had the Supreme Court decided *Humphrey's Executor* differently; it certainly does not strongly show that Congress would have created no Board instead.  And while the legislative record admittedly contains language discussing the importance of an independent Board, those statements merely "confirm that Congress preferred an independent [NLRB] to a dependent one; but they shed little light on the critical question whether Congress would have preferred a dependent [NLRB] to *no agency at all*."  *Seila Law*, 591 U.S. at 236 (emphasis in original).

Thus, the traditional severability analysis requires that the removal protection in 29 U.S.C. § 153(a) be severed, rather than holding the entire NLRA unconstitutional due to those protections.  And that conclusion is even more compelling here, as simply severing the removal protections would reflect reality.  As discussed above, these removal protections are not being enforced; the D.C. Circuit in *Harris* refused to enforce the removal protections and return former Member Wilcox to the NLRB.  Accordingly, severing the removal protections would do the least amount of violence to the NLRA while providing Hudson appropriate relief.[3]

---

[3] The district court in *Findhelp* quizzically stated that severance would not remedy the injury of being subject to an unconstitutional proceeding because "[a]llowing the proceeding to go forward under a judicially altered framework would perpetuate that harm."  *Findhelp*, 2026 WL 1365028 at *3.  It not clear at all how severing the provisions that render the proceeding unconstitutional would continue to perpetuate the harm of an unconstitutional proceeding.

2.      Severance of the NLRB Members' removal protections would eliminate any concern regarding the removal protections afforded the NLRB's ALJs.  The Fifth Circuit in *Jarkesy v. SEC* held that the combination of removal protections extended to SEC Commissioners, MSPB Members, and SEC ALJs were "sufficiently onerous, that the President has lost the ability to take care that the laws are faithfully executed."  34 F.4th 446, 463-64 (5th Cir. 2022).  By making NLRB Members removable at-will, there would no longer be any concern that the President had lost the ability to take care that the laws are faithfully executed.

The NLRB's ALJs are "the agent of the Board conducting the hearing in an unfair labor practice proceeding."  29 C.F.R. § 102.1(f).  The NLRB is not obligated to use ALJs, and when it does use them, the ALJs issue only recommended orders.  29 U.S.C. §§ 160(b), (c); 29 C.F.R. §§ 102.34, 102.50 (explaining that Board may itself conduct hearings instead of ALJ).  These recommended orders must be consistent with Board precedent.  *See, e.g., Pathmark Stores, Inc.*, 342 NLRB 378, 378 n.1 (2004).  Parties can appeal any decision made by an ALJ throughout the proceeding to the Board.  29 C.F.R. § 102.46(a).  And once an appeal is filed, the Board has plenary authority to review any aspect of an ALJ's recommended orders.[4]  29 U.S.C. § 160(c); 29 C.F.R. § 102.46(a); *Hedstrom v. NLRB*, 629 F.2d 305, 315-16 (3d Cir. 1980).

At bottom then, the Board has total control over the actions of its ALJs.  By severing the NLRB Member's removal protections, the President would have the authority to hold those Members fully accountable for the actions of the ALJs.  That ability to remove NLRB Members for the actions of ALJs would either compel the Members to exercise their review authority in compliance with the President's policy preferences, or allow the President to remove an NLRB

---

[4] Section 10(c) of the NLRA states that the NLRB will adopt the ALJ's recommended order if no party chooses to appeal ALJ's recommended order.  29 U.S.C. § 160(c).

Member and replace them with someone who will exercise that review authority.  That would ensure that the President could take care that the NLRA is faithfully executed.

3.      Even if severance of the NLRB Members' removal protections are not sufficient to allow the President to ensure the laws are faithfully executed, this Court should sever the removal protections afforded the MSPB Members found in 5 U.S.C. § 1202(d).  At that point, the NLRB ALJs will unquestionably be subject to a single layer of removal protections, which Hudson doesn't argue is unconstitutional.[5]

Whether the MSPB Members' removal protections can be severed is a similar analysis as for the NLRB Members.  While the Civil Service Reform Act of 1978, which created the MSPB, doesn't include a severability provision, Congress's "silence" on severability "is just that— silence—and does not raise a presumption against severability."  *Alaska Airlines*, 480 U.S. at 686.  Instead, the inquiry is still "whether the statute will function in a manner consistent with the intent of Congress."  *Koog*, 79 F.3d at 462 (quotation marks omitted).

No evidence suggests that the statute would not so function, and Hudson presents none. As with the Board, the MSPB is capable of functioning independently without the removal protections.  None of the MSPB's duties and responsibilities turn on the removal protections. And we know that the MSPB can function without the removal protections; the President removed Member Harris is March 2025, and the MSPB remained functioning.[6]

---

[5] The district court in *Findhelp* suggested that a court choosing between various severability options is beyond the court's authority and instead is Congress' job.  *Findhelp*, 2026 WL 1365028 at *2.  But the Supreme Court has repeatedly rejected that argument, and emphasized, if Congress would prefer a different approach than the severance decision made by the court, it can always pass new constitutional legislation.  *Free Enterprise Fund*, 561 U.S. at 509-10; *U.S. v. Arthrex, Inc.*, 594 U.S. 1, 24-25 (2021).

[6] The MSPB lost a quorum between April 10 and October 27, 2025, but has been functioning with a quorum since.

In addition, just as with the NLRB removal protections, the MSPB Members' protections should be severed because this too would reflect reality.  Like the Board Members, the President has removed an MSPB Member, the D.C. Circuit refused to enforce the removal protections to return Member Harris to her position, and the Supreme Court has allowed the removal to stand.  Accordingly, the removal protections in 5 U.S.C. § 1202(d) are not being enforced.  Severance of those removal protections, then, would implement the least amount of change to the statute while providing Hudson appropriate relief.[7]

## III.    This Court Lacks Jurisdiction over Hudson's Remedial Claim

Hudson asks this Court to permanently enjoin the NLRB's proceedings due to the NLRB's attempt to seek legal relief pursuant to its decision in *Thryv, Inc*, 372 NLRB No. 22 (2022), for two reasons: 1) because such relief exceeds the NLRB's "statutory authority," and 2) because the *Thryv* remedy "independently" violates the Seventh Amendment.  Doc.95 at PageID#1940.  But Hudson never explains how this Court has jurisdiction over either claim; nor can it.

Start with the statutory claim.  No court has held that it has jurisdiction over a collateral lawsuit arguing that the NLRB seeks to impose a remedy that exceeds its statutory authority, rather than requiring that claim to first be brought to the NLRB with court of appeals review of a

---

[7] This is why the NLRB Defendants' suggestion that the Court sever the ALJ removal protections is unnecessary.  *See* Doc96. PageID#1974-76 and n.12.  Severing the ALJs' removal protections would go beyond what this Court needs to do to ensure the constitutionality of the NLRB proceedings, and would unnecessarily deprive the ALJs of constitutional removal protections.  With the removal protections afforded NLRB Members and MSPB Members not being enforced, ALJs enjoy only a single layer of enforceable removal protections.  No party disputes that a single layer of removal protections for ALJs is constitutional.  Thus, severing these protections would effectively remove all layers of removal protections where at most only two need be removed to ensure a constitutional proceeding.

final Board order under 29 U.S.C. § 160(f). And any application of the factors from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), show why this Court lacks jurisdiction.

*Thunder Basin*'s first factor is whether precluding district court jurisdiction would "foreclose all meaningful judicial review" of the claim. *Id*. at 212. Because, at bottom, Hudson raises a garden-variety dispute about the scope of the Board's remedial authority, that argument could receive meaningful judicial review through the NLRA's procedures. *See* 29 U.S.C. §§ 160(e) and (f). Indeed, we know this to be true, as the Fifth Circuit has reviewed this very issue, and has refused to enforce the Board's *Thryv* remedy. *Hiran Mgmt., Inc. v. NLRB*, 157 F.4th 719, 729 (5th Cir. 2025) (granting petition for review on *Thryv* issue); *Harvard Maintenance, Inc. v. NLRB*, 165 F.4th 886, 902 (5th Cir. 2026) (vacating portion of Board's order directing *Thryv* remedy). A garden-variety dispute about the scope of the Board's statutory remedial authority also is not "wholly collateral to [the] statute's review provisions," *Thunder Basin*, 510 U.S. at 212 (*Thunder Basin*'s second factor); and further is not "outside the agency's expertise," *id*. (*Thunder Basin*'s third and final factor). Again, *Hiran Management* and *Harvard Maintenance* illustrate that these exact disputes over *Thryv* remedies are classic disputes that arise through the NLRA's processes. Accordingly, the NLRA's review procedures must be followed on Hudson's statutory claim.

And the same goes for the Seventh Amendment claim. At no point does Hudson explain how this Court has jurisdiction over its Seventh Amendment claim. At most, it cites to the permanent injunction issued by the district court in *Findhelp*. Doc.95 at PageID#1937. That court held it had jurisdiction over an identical claim because the lawsuit didn't seek review of a final Board order under 29 U.S.C § 160(f), and because, pursuant to the Supreme Court's decision in *Axon Enterprises, Inc. v. FTC*, 598 U.S. 175 (2023), the injury alleged is a structural

14

constitutional one that doesn't have to be channeled through the statutory review scheme. *Findhelp*, 2026 WL 1365028 at \*4.  But *Axon* addressed only whether a removal-protections claim had to be channeled; it didn't address any and all constitutional claims.  Accordingly, the court in *Findhelp* improperly short-circuited the requisite *Thunder Basin* inquiry to determine whether it had jurisdiction.  When that inquiry is applied, it is clear this Court lacks jurisdiction.

In both *Hiram Management* and *Harvard Maintenance*, the Fifth Circuit held that, because the *Thryv* remedy exceeded the Board's statutory authority, there was no need to address a Seventh Amendment claim.  *Hiran Mgmt.*, 157 F.4th at 722 n.1; *Harvard Maintenance*, 165 F.4th at 897 n.10.  In other word, because the Board exceeded the statutory authority, there was no Seventh Amendment violation.  And if left with just the statutory claim, then the claim must be channeled through the Board.  Accordingly, this Court lacks jurisdiction over the Seventh Amendment claim because it is intertwined with the Board's statutory authority.[8]

**Conclusion**[9]

For the reasons stated above, *amicus* urges this Court to deny Hudson's request to permanently enjoin the NLRB proceedings against it.

---

[8] Otherwise, the Seventh Amendment claim should be dismissed for failure to state a claim, as the Seventh Amendment claim is uncognizable under *Hiram Management* and *Harvard Maintenance*.

[9] Due to the limited space afforded *amicus*, the UE doesn't address Hudson's mixed function claim in detail.  Suffice it to say, however, that this claim is foreclosed by binding precedent. *See Withrow v. Larkin*, 421 U.S. 35, 58 (1975); *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1046 (5th Cir. 2023).  Hudson's argument is built entirely on one dissenting judge's opinion in which the judge never argued that the Board's proceedings amounted to a constitutional violation.  Doc.95 at PageID#1941-42 (citing *Trader Joe's Co. v. NLRB*, 167 F.4th 766, 794-95 (5th Cir. 2026) (Oldham, J., dissenting)).  Also, *amicus* cannot address Hudson's request for retroactive relief in detail, but points out that the Fifth Circuit in *Harvard Maintenance* held that a party must show a harm caused by removal protections to obtain retroactive relief on removal-protection claims. 165 F.4th at 902.

15

Date: June 3, 2026

Respectfully submitted,

/s/ Maneesh Sharma
D.C. Bar No. 1033407
AFL-CIO
815 16th St, N.W.
Washington, D.C. 20006
Tel: (202) 637-5336
Email: msharma@aflcio.org

Yona Rozen
State Bar No. 17358500
AFL-CIO
815 16th St., N.W
Telephone: (202) 637-5336
Email: yrozen@aflcio.org

Margot Nikitas*
General Counsel
United Electrical, Radio and Machine
Workers of America (UE)
429 Fourth Avenue, Suite 805
Pittsburgh, PA 15219
Tel: (412) 471-8919
margot.nikitas@ueunion.org

Andrew Lyubarsky*
AFL-CIO
815 16th St., N.W.
Washington, D.C. 20006
Tel: (202) 227-8969
alyubarsky@aflcio.org

\* Admitted *pro hac vice*

*Attorneys for Proposed Intervenor UE*

16

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2026, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court and in accordance with the Federal Rules of Civil Procedure. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record:

Eric Charles Wood
Brown Fox, PLLC
6303 Cowboys Way, Suite 450
Frisco, TX 75034
214-327-5000
Email: eric@brownfoxlaw.com

Maureen Rouse-Ayoub
Varnum LLP
39500 High Pointe Blvd. Ste 350
Novi, MI 48375
248-567-7400
Email: mrayoub@varnumlaw.com

Neil Youngdahl
Varnum LLP
P.O. Box 352
Grand Rapids, MI 49501-0352
616-336-6961
Email: neyoungdahl@varnumlaw.com

*Counsel for Plaintiff*

Aaron Samsel
National Labor Relations Board
1015 Half St SE, 4th Floor
Washington, DC 20003
202-273-1923
Email: aaron.samsel@nlrb.gov

Grace L. Pezzella
National Labor Relations Board
1015 Half St SE, 4th Floor
Washington, DC 20003
202-273-0247
Email: grace.pezzella@nlrb.gov

*Counsel for Defendants*                                    /s/ Maneesh Sharma